## Case No. 6,153.

### HART v. The LITTLEJOHN.

[1 Pet. Adm. 115.] [1]

District Court, D. Pennsylvania. 1800.

WAGES OF SEAMEN—CAPTURE OF VESSEL—DEDUCTION OF SALVAGE.

An American ship delivered her cargo at Liverpool; and on her return to the United States, was captured by a French cruiser, recaptured by an English frigate, and restored, on payment of salvage. The libellant, a mariner, having been taken on board the French cruiser, was carried into France, and there released.—Wages for the whole voyage of the Littlejohn claimed, and allowed, deducting a proportion of salvage.

[Cited in Bordman v. The Elizabeth, Case No. 1,657; Walton v. The Neptune, Id. 17,-135; Watson v. The Rose, Id. 17,288; Emerson v. Howland, Id. 4,441; Brown v. The Independence, Id. 2,014; Fuller v. Colby, Id. 5,149; U. S. v. New Bedford Bridge, Id. 15,867; The Atlantic, Id. 620; The Ocean Spray, Id. 10,412; Highland v. The Harriet C. Kerlin, 41 Fed. 223.]

In admiralty.

PETERS, District Judge. Joseph Hart, in July, one thousand seven hundred and ninety-nine, shipped, as a mariner, on board of the American ship Littlejohn, at Edenton, in North Carolina, on a voyage from thence, to Liverpool, in England, and back to Eden-

1 [Reported by Richard Peters, Jr., Esq.]

ton. The ship went to Liverpool; and delivered her cargo. On her return, she was captured by a French cruiser, in the possession of which she remained about eight days. She was recaptured, by an English frigate, and carried into Lisbon; where she was restored, on payment of salvage, and arrived, from Lisbon, at Philadelphia, where the mariners, who came in her, were discharged. The libellant was taken on board the French cruiser, and carried into France, a prisoner. Being there released, he worked his passage home. The question made, in this cause, is, "Whether this mariner, who was forcibly taken from the ship, in which he was engaged for the voyage, shall be paid, pro rata, to the time of capture, or shall have his full wages for the voyage?" Without entering into the facts, as to the voyage being ended at Philadelphia, or not; the cause was put on the question stated—to it, therefore, I shall confine myself.

I have, heretofore, in many instances, decreed, that seamen, under like circumstances, with the libellant, should be paid their full wages for the voyage. I have always supposed, that if the ship, owing to the absence of one, or, more mariners, thus forcibly taken away, was at the expense of hiring others, this extra expense was chargeable as an average loss;[2] or, in an account, for spoliations on our neutral commerce, if the capture was made by the subjects of a power in amity with us, and was finally adjudged unlawful; yet, having only the right to determine the question of wages, I have not given my opinion, as to consequences, or entered into collateral enquiries.[3] I had grounded my opinion, in cases like the present, and those of sailors falling sick, during the voyage, on the authorities cited by the libellant's counsel, and some others. Vide Consolato del Mare, c. 179, § 202; Sea Laws, 130; Laws Oleron, art. 7, p. 140, note; Emerig. Ins. pp. 635, 637, 638; 1 Valin's Ord. France, pp. 75, 748; Pothier Louage de Matelots; Laws Wisby, art. 45, p. 203. These authorities, or several of them shew, among other things,

---

[2] If it can be charged at all, as average, it must be as what is called petty average; as a disbursement, the master was bound, necessarily, to furnish, for the benefit and safety of both ship, and cargo.

[3] This case was determined, at a time, when arrests of our ships, by others than the French, were, for the purpose of adjudication, for breaches of neutrality: and when, in Europe, some attention was paid to the laws of nations, and special conventions, by the courts of the belligerents. The payment of salvage was decreed by the British courts, and submitted to under no positive regulation. It was said, by them, to be an affair of comity, in treating our ships on the same footing with those of their own nation. The fact is, that no salvage is due, in common cases, where neutrals were taken out of the possession of a belligerent, and bona fide carrying in, for examination, by a competent and impartial tribunal. But between the French, and the United States, there then existed partial hostility. See a note to the case of Clayton v. The Harmony [Case No. 2,871].

that if a mariner is sent out of the ship, on a special service, and is taken, and made a slave, falls sick, &c. his ransom, cure, and expenses, are to be paid by the master, or owner, as well as his full wages for the voyage. It is certain, that those authorities which mention the case of a special mission, are most clear, on the point of ransom; though it is often said, in addition, "that the ransom shall be paid, without prejudice to wages." There is also, in 1 Valin, 748, a distinction taken, between the case of one sent from the ship, and that of one taken in the ship, with the rest of the crew.[4] In this latter case, the ransom of no one is to be paid. If the vessel is made prize, and lost to the owners, no doubt, neither ransom or wages can legally, or justly be claimed. There is a special obligation, however, on the owner or master, to indemnify a sailor, sent on extra duty, and exposed thereby to uncommon risk. But in these authorities, whenever wages are mentioned, they are not designated as due, merely on account of the misfortune occurring on the particular exigency, but on the general principle—"because he (the mariner), is not in fault;" and it is added, "the defect of service is no more to be imputed to him, than if he had fallen sick on the voyage, in which case, his wages are due without deduction." 1 Valin, p. 748.[5] Thus, placing his capture, even on special service, as it respects wages, on the same footing with his falling sick on the voyage. Now it is clear, that in case of sickness preventing a performance of duty, if the malady be not occasioned by the mariner's mal-conduct, the full wages are payable, whatever expense, or loss, the ship may incur, on this

account; and I see no reasonable distinction between this case and that. If a sailor dies on the voyage, his heirs shall have his full wages. If killed in battle, they shall also have a share of all prizes. See Valin; Emerig. Ins. 633, 637, 638; Laws Oleron, art. 7; 1 Esp. 114. If it were relevant to this point for me to shew, that the loss should be charged as an average loss, I might cite from the 3d edition of Malyne's Lex Mercat., p. 62, of his "Collection of all Sea Laws," the 18th chapter, where it is declared, that when goods are taken by a pirate out of a ship, though not as contribution for the rest, yet the loss shall be common to all concerned.[6] The chance of the seaman carried off, while others are permitted to remain, should not be worse than that of the owner of the particular goods, taken at the pleasure of the pirate. Mal. Lex Merc. 109. But I do not much rely on this analogy, or authority; my opinion is founded on the general principle—"That, where a mariner is prevented by force, when he is not in fault, from performing his voyage, he is to be paid his full wages." Consulato del Mare. But if, during the time the voyage continues, he earns wages in other service, these shall be deducted from his claim. I have uniformly, in such instances, ordered this to be done.

The general principle which has influenced my judgment, is established in the Curia Philippica, 472, 36, where it is laid down, that "if a master of a ship discharge a mariner, before the end of the voyage; or if, by a fortuitous circumstance, he ceases to serve, yet he shall have his wages, for the time past, as well as for that to come." But all wages, earned during the time he was in another service, are to be deducted. In the Roman Digest (pages 514, 515) the like general principle is established, in the cases of servants, an amanuensis, and in that of an advocate, who is not obliged to return his fee, if it was not his fault that he did not try a cause. See, also, Godol. Adm. Laws, pp. 177, 178, note and text. It is true, that this general principle cannot be carried into all cases. In the British law books, we find it held by respectable judges, "that a seaman impressed, or one of the crew of a ship ransomed, shall only be paid pro rata." But the impressment of seamen, is deemed, in England, a lawful act, and encouraged by the policy of that country; and the seaman receives,

[4] Where any peculiar benefits are appropriated to one sent on a special mission, they are allowed, to induce and reward the risks and sufferings, by casualties, to which those in the ship are not exposed, the undertaking being most commonly voluntary, and not any part of the terms of the general contract. It differs from the case of one forcibly taken out of the ship, who participates in the fate of the ship; and receives, or not, his wages, according to circumstances operating on freight. One taken by force out of the ship may, in some instances, be individually wronged; and separated from his contract, by a lawless and unjustifiable act of violence, merely personal as to him, and not part of the transaction by which the whole crew are affected. No general position can be formed, to embrace every occurrence.

[5] Commentaries on the laws and ordinances of France. It is difficult to determine which most to admire, the laws of Louis the fourteenth, on which these commentaries were written, or the talents, acuteness, learning, and judicious observation of the commentator. From these highly celebrated laws, and their masterly commentator, the knowledge of maritime contracts, assurances, and other branches of this subject, displayed on the British bench, by some of their most eminent judges, is said to have been acquired. This may, or may not, have originated in partiality for the laws, and the country of their origin. But neither the laws, or their commentator, required this additional testimony. They bear within themselves their own eulogy.

[6] In some of the books (Molloy, 249), a distinction is taken where goods are taken by pirates to spare the rest, this being beneficial to all, contribution must be paid by all. But where part are taken by violence, under no agreement to spare the rest, but as an independent spoliation, the residue is not subject to average. It is on this principle, to be found in other cases, that I have considered a seaman taken by force (not as part of the transaction in which a ship, and her crew, were generally involved,) when others of the crew were suffered to proceed on the voyage with the ship, to be individually wronged, and not entitled to wages for the voyage.

on his change of employment, what by their laws, are established as competent wages. The ransom of ships captured, is the purchase of the property from the enemy, after it is lost, and the ransomers hold it, in some measure by a new title. Capture, involves the loss of wages. The ransom of ships is not encouraged by the British government, but their laws particularly favour recaptures, and in such cases, extend the jus post-liminii farther, than those of most other nations. Whatever the opinion of common law judges may be, I am bound to follow the rules of the civil and maritime law. When the ship and cargo are restored, on recapture, and payment of salvage, the owner recovers his freight; and this is the parent of wages. It is only where freight is recovered, that I have applied this general principle, to the claims of seamen. They contribute, out of their wages, their proportion of salvage. That no adjudged case be found in the books, exactly like this under consideration, is, perhaps, true. It may never have been disputed. But, as such cases frequently occur, this point is of considerable importance, both to our merchants, and mariners. I do not wish it to rest on my judgment alone. Whenever the sum claimed, is sufficient, in amount,[7] to warrant an appeal, I shall recommend the cause to be carried up to a superior court. In the mean time, I cannot see any good cause to alter my opinion, and I therefore, adhere to the principles of my former decisions: And do adjudge, order, and decree, that the said Joseph Hart, have, and recover, in full satisfaction of his wages, the sum of one hundred and fifty-three dollars, and eighty-three cents, being the balance of his full wages for the voyage. Out of this sum, are to be deducted any sums, received by him, and also his proportion of salvage, paid on the restoration of the ship, and cargo. And I do further adjudge, order, and decree, that the said ship Little-john, together with her tackle, apparel, and furniture, or so much thereof, as may be necessary, be condemned and sold, for the payment of the sum of money, herein before decreed, to the said Joseph Hart, and of the costs and charges, accruing in the premises.

---

[7] When this decision was given, no appeal was permitted in cases where the amount claimed did not exceed three hundred dollars, but a late act of congress, allows appeals from the district, to the circuit, court, in all cases where the sum in dispute exceeds fifty dollars.

